# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 7367 | **DATE** | 10/27/2009 |
| **CASE TITLE** | Aleshire vs. Harris, N.A. | | |

**DOCKET ENTRY TEXT**

The Court grants in part and denies in part Defendant's Motion to Dismiss.  The Court also grants Plaintiff leave to file a Second Amended Complaint in accordance with this order and counsel's Federal Rule of Civil Procedure 11 obligations by no later than 11/16/09.  Defendant to answer or otherwise plead by 12/1/09.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

     Plaintiff Suzanne Aleshire ("Aleshire") filed the instant five-count First Amended Complaint against Defendant Harris, N.A. ("Harris") alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as well as state law claims of breach of contract, tortious interference with prospective economic advantage, and tortious interference with contractual relations.  Before the Court is Harris' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court denies Harris' motion as to Count II.  The Court grants Harris' motion as to Counts I, III, and IV, without prejudice, and Count V with prejudice.  The Court also grants Plaintiff leave to file a Second Amended Complaint in accordance with this order – and counsel's Rule 11 obligations – by no later than November 13, 2009.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Also, under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Limestone Dev. Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "While complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks,* 578 F.3d at 579 (citation omitted). Finally, a "party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008).

## BACKGROUND

On December 5, 2005, Defendant Harris acquired Villa Park Bank, and with it, five of Aleshire's mortgage loans. (R. 25-1, First Am. Compl. ¶ 8.) Aleshire alleges that after Harris' acquisition, Harris erroneously reported that each of her mortgage loans was over the credit limit to consumer reporting agencies ("CRA") resulting in other lenders refusing to loan her money. (*Id.* ¶¶ 10-14, 15.) Aleshire further alleges that on or about June 9, 2006, she met with Frank Vitelli, the Senior Vice President of Community Banking for Harris at the Villa Park, Illinois location. (*Id.* ¶ 19.) At that time, Vitelli informed Aleshire that the reporting errors would be corrected. (*Id.*) Aleshire further alleges that she was present with the Villa Park branch manager and Vitelli when they called the CRA, specifically Trans Union, to inform the agency of Aleshire's dispute. (*Id.* ¶ 49.) In addition, Aleshire maintains that she hired a consulting firm and that "[b]oth Aleshire and the consulting agency notified Defendant" about the reporting errors. (*Id.* ¶ 50.)

Aleshire further alleges that she received a letter in May 2009 in which Harris notified her that she had recently applied for a home loan with Harris. (First Am. Compl., Count II ¶ 8.) Aleshire also alleges that Harris informed her that as a result of the loan application, Harris requested and obtained her credit score report from Trans Union. (*Id.* ¶ 9.) Aleshire, however, maintains that she did not apply for this mortgage loan in May 2009 and that she did not authorize Harris to request and obtain her credit score report from Trans Union. (*Id.* ¶ 10.)

**ANALYSIS**

I.  **FCRA Claim – Count I**

In Count I of her First Amended Complaint, Aleshire alleges a private cause of action under 15 U.S.C. § 1681s-2(b) based on her allegations that Harris failed to accurately report her credit information to national CRAs and failed to report the consequent dispute regarding her credit information. Section 1681s-2(b), which provides for a private cause of action, requires that furnishers of credit information – such as a bank – must conduct a reasonable investigation concerning disputes about information they have provided to CRAs. *See Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005); 15 U.S.C. § 1681s-2(b). Section 1681s-2(b) is triggered when the furnisher of information receives notice under Section 1981i(a)(2), namely, when a CRA notifies the furnisher that a consumer disputes certain reported items. *See Lang v. TCF Nat'l Bank,* 249 Fed.Appx. 464, 465 (7th Cir. 2007) (unpublished opinion); *see also Gillespie v. Equifax Info. Serv., LLC,* 484 F.3d 938, 941 (7th Cir. 2007) (Section 1681i provides a grievance procedure for consumers to identify and correct inaccurate information in their credit files). Under Section 1681s-2(b), Harris' obligation is "not triggered by a consumer's direct complaint to the alleged furnisher of incorrect information." *Kennedy v. Equifax, Inc.,* ___ F.Supp.2d ___, 2009 WL 1658013, at *4 (S.D. Ind. June 12, 2009). Instead, Harris is "accountable under § 1681s-2(b) only if [it] continues to supply inaccurate data to credit reporting agencies after proper notification by the CRA." *Rollins v. Peoples Gas Light & Coke Co.,* 379 F.Supp.2d 964, 967 (N.D. Ill. 2005).

Under this standard, Harris argues that its obligations under Section 1681s-2(b) were not triggered because Aleshire fails to allege that a CRA notified Harris of her dispute. Indeed, Aleshire merely alleges that she contacted Harris and that Harris' employees consequently contacted the CRA in an effort to assist her. (First Am. Compl. ¶¶ 19, 49, 50.) In her response brief to Harris' motion to dismiss, Aleshire further argues that "it must be assumed that the CRA contacted Defendant after it received the consulting firm's notice about the dispute" and requests that the Court take judicial notice that the CRA notified Harris accordingly. (R. 34-1, Pl.'s Resp., at 4-5.)

First, the Court will not take judicial notice that the CRA contacted Harris because this fact is disputed – as highlighted by the motion to dismiss and attendant legal memoranda. *See* Fed.R.Evid. 201(b); *see also Doss v. Clearwater Title Co.,* 551 F.3d 634, 640 (7th Cir. 2008). Meanwhile, because Aleshire has failed to allege that a CRA notified Harris of the dispute, thus triggering Harris' obligations under Section 1681s-2(b), Aleshire has failed to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. As such, the Court grants Harris' motion to dismiss Count I without prejudice on this basis.

Harris also maintains that Aleshire's FCRA claim based on Section 1681s-2(b) is barred by the FCRA's two-year statute of limitations. *See* 15 U.S.C. § 1681p. Section 1681p(1) specifically states that the statute of limitations is "two years after the date of discovery by the plaintiff of the violation that is the basis for such liability." In her First Amended Complaint, Aleshire alleges that on or about June 9, 2006, she met with Frank Vitelli, the Senior Vice President of Community Banking for Harris at the Villa Park, Illinois branch and informed him of the alleged reporting errors. (First Am. Compl. ¶ 19.) Aleshire filed this lawsuit on December 24, 2008. Thus, from the face of her First Amended Complaint, it appears that Aleshire's Section 1681s-2(b) claim is untimely under the FCRA's two-year limitations period.

Aleshire, however, argues that the statute of limitations should be equitably tolled based on Harris' false and misleading statements that it would correct the reporting errors. "Equitable estoppel, sometimes known as fraudulent concealment, 'suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing.'" *Cancer Found., Inc. v. Cerberus Capital Mgmt.,*

*LP,* 559 F.3d 671, 676 (7th Cir. 2009) (citation omitted). "Classic examples include hiding evidence, destroying evidence, or promising not to plead the statute of limitations." *Id.* (citing *In re Copper Antitrust Litig.*, 436 F.3d 782, 790-91 (7th Cir. 2006)). Aleshire does not allege that Harris fraudulently concealed information or that Harris took active steps to prevent Aleshire from suing. *See In re Copper Antitrust Litig.,* 436 F.3d at 790. Instead, Aleshire argues that Harris misled her and "actively prevented" her from filing this lawsuit. Accepting as true all of Aleshire's factual allegations in her First Amended Complaint, the Court would be hard-pressed to conclude that Aleshire has sufficiently alleged that Harris "actively prevented" her from filing suit. Therefore, the Court also grants Harris' motion to dismiss Count I – on this alternative basis – without prejudice.

Accordingly, the Court grants Harris' motion to dismiss Count I of the First Amended Complaint. The Court also grants Aleshire leave to file a Second Amended Complaint as to Count I in accordance with this order and counsel's Rule 11 obligations.

## II.     FCRA Claim – Count II

In Count II of her First Amended Complaint, Aleshire alleges that Harris violated the FCRA for reviewing her credit report in 2009 without a permissible purpose, especially because she did not provide written consent for Harris to do so. *See* 15 U.S.C. § 1681b. Under Section 1681b, the release of consumer credit reports is prohibited unless the release occurs for one of the permissible purposes set forth in Section 1681b(a). *See Cole v. U.S. Capital,* 389 F.3d 719, 725 (7th Cir. 2004). "Many of the enumerated permissible purposes set forth in 1681b are transactions initiated by the consumer." *Id.*

In its motion to dismiss, Harris maintains that because Aleshire provided written consent to pull her credit report concerning her previous mortgage loans that Harris acquired in 2005, Harris' conduct of obtaining and reviewing her credit report in 2009 is excepted by Section 1681b(a)(2). Section 1681b(a)(2) allows a CRA to furnish a consumer report "[i]n accordance with the written instructions of the consumer to whom it relates." *Kodrick v. Ferguson,* 54 F.Supp.2d 788, 789 (N.D. Ill. 1999). As such, Harris argues that under the statute it could obtain Harris' 2009 credit report based on Harris' written consent in her applications for mortgage loans in 2004 and 2005. Harris, however, fails to support its argument with any controlling legal authority, and at this procedural posture, Aleshire has sufficiently alleged a Section § 1681b claim. *See Twombly,* 550 U.S. at 550. In particular, Aleshire alleges that Harris sent her a letter in May 2009 notifying her that she had applied for a home loan with Harris and that as a result of the loan application, Harris requested and obtained her credit score report from Trans Union. Aleshire further alleges that she did not apply for this loan in May 2009 and that she did not authorize Harris to obtain her credit score report at that time. Based on these allegations, the Court denies Harris' motion to dismiss Count II of the First Amended Complaint.

## III.    Breach of Contract – Count III

Next, Aleshire brings a breach of contract claim against Harris. To prevail on a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) performance under the terms of the contract; (3) defendant breached the contract; and (4) plaintiff suffered an injury as a result of defendant's breach. *See TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.,* 491 F.3d 625, 631 (7th Cir. 2007) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.,* 351 Ill.App.3d 752, 286 Ill.Dec. 734, 814 N.E.2d 960, 967 (2004)). Also under Illinois law, the "principles of contract state that in order for a valid contract to be formed, an offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." *Business Sys. Eng'g, Inc. v. International Bus. Mach. Corp.,* 547 F.3d 882, 888 (7th Cir. 2008) (quoting *Academy Chicago Publishers v. Cheever,* 144 Ill.2d 24, 161 Ill.Dec. 335, 578 N.E.2d 981, 983 (1991) (internal quotation marks omitted)). "The definite and certain terms requirement serves several important purposes, chief among them to ensure that the

parties in fact have reached an agreement and to provide courts with a basis for enforcing the obligations that the parties sought to impose upon one another." *Association Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 850 (7th Cir. 2007).

In her First Amended Complaint, Aleshire alleges that an oral contract was formed when she met with Vitelli on June 9, 2006 to discuss Harris' erroneous reporting of her loan amounts after which Vitelli stated that the errors would be corrected. (First. Am. Compl. ¶¶ 46-48.) Aleshire, however, has failed to sufficiently allege the material terms of the purported oral contract with any specificity, and thus has not raised her right to relief above the speculative level. *See Twombly,* 550 U.S. at 555; *Association Benefit Servs.,* 493 F.3d at 850 ("No contract exists under Illinois law, and, indeed, under principles of general law, if the agreement lacks definite and certain terms."). Put differently, Aleshire's allegations concerning her breach of contract claim fail to give sufficient context to the offer, acceptance, and consideration, and therefore, are too vague to state a claim that is plausible on its face. *See Twombly,* 550 U.S. at 570. The Court thereby grants Harris' motion to dismiss Count III without prejudice and grants Aleshire leave to amend her breach of contract claim.

## IV.   Tortious Interference with Prospective Economic Advantage – Count IV

In Count IV of the First Amended Complaint, Aleshire alleges that Harris tortiously interfered with her business relations with other lenders, namely, Wachovia Bank. "Under Illinois law, the elements of that claim are '(1) [the plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.'" *Botvinick v. Rush Univ. Med. Ctr.,* 574 F.3d 414, 417 (7th Cir. 2009) (quoting *Fellhauer v. City of Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 878 (1991)). Also under Illinois law, a "plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party." *Associated Underwriters of Am. Agency, Inc. v. McCarthy,* 356 Ill.App.3d 1010, 1020, 292 Ill.Dec. 724, 826 N.E.2d 1160 (2005); *see also Vickers v. Abbott Labs.,* 308 Ill.App.3d 393, 411, 241 Ill.Dec. 698, 719 N.E.2d 1101 (1999) ("the tort of interference with prospective advantage requires a showing of action by the defendant toward a third party.")

In her First Amended Complaint, Aleshire alleges that she tentatively obtained refinancing from Wachovia on the first mortgage of the property at 402 Willow Road, Winnetka, Illinois. (First Am. Compl. ¶ 28.) In order to complete the transaction with Wachovia, Aleshire requested that Harris subordinate her two other loans on the Winnetka property. (*Id.* ¶¶ 28-34, Count IV ¶ 50.) Harris, however, would not subordinate the two loans without Aleshire tendering two months of mortgage payments in advance. (*Id.* ¶ 30; Count IV ¶¶ 50, 51.) Also, Aleshire alleges that these loans were already in second and third positions on the Willow Road property, and thus argues that Harris' request for two months of mortgage payments was unjustified and unreasonable. (*Id.* ¶ 31.)

Aleshire, however, fails to allege that Harris engaged in improper conduct directed toward a third party, in this instance, Wachovia, as required under Illinois law. *See LaSalle Bank Nat'l Ass'n v. Moran Foods, Inc.,* 477 F.Supp.2d 932, 939 (N.D. Ill. 2007) ("Illinois law dictates that any tortious interference by a defendant, either with a contract or prospective business relationship, must have been directed toward the third party, not the plaintiff."). Without any such allegation, Aleshire has failed to allege sufficient facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. Therefore, the Court grants Harris' motion to dismiss Count IV without prejudice and grants Aleshire leave to amend this claim, if indeed, Harris engaged in improper conduct directed at Wachovia.

**V.      Tortious Interference with Contractual Relations – Count V**

Finally, Aleshire alleges that Harris tortiously interfered with her contractual relations with Wachovia Bank.  To establish a claim for tortious interference with contractual rights under Illinois law, Aleshire must show (1) the existence of a valid and enforceable contract between Aleshire and a third party, (2) Harris' awareness of the contract, (3) Harris' intentional inducement of a contract breach, (4) an actual breach of contract by the third party induced by Harris' conduct, and (5) damages.  *See Cody v. Harris,* 409 F.3d 853, 859 (7th Cir. 2005); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 154-55, 137 Ill.Dec. 19, 545 N.E.2d 672 (1989).

Here, Aleshire alleges that she had a valid and enforceable contract with Wachovia, specifically, that she obtained tentative refinancing on the first mortgage of the property at 402 Willow Road.  (First Am. Compl. ¶ 28, Count V ¶ 46.)  She further alleges that Harris intentionally and maliciously induced a breach of contract based on Harris' refusal to subordinate the second and third mortgage on the Willow Road property without two months of mortgage payments in advance.  (Count V ¶ 49.)  Aleshire, however, fails to allege that Harris induced a third party, namely, Wachovia, to breach the contract.  *See Purmal v. Robert N. Wadington & Assoc.*, 354 Ill.App.3d 715, 727, 289 Ill.Dec. 578, 820 N.E.2d 86 (2004) ("defendant's wrongful conduct [must] cause[] a subsequent breach of the contract by the third party.")

Instead, Aleshire alleges that she did not have "the ability to uphold her contact with Wachovia" and that she was "forced into default."  (Count V ¶¶ 50, 51.)  In short, Aleshire alleges that she breached her contract with Wachovia.  *See Wheel Masters, Inc. v. Jiffy Metal Prods. Co.,* 955 F.2d 1126, 1129 (7th Cir. 1992) ("Of course, in a tortious interference with contract claim, the plaintiff must produce evidence proving that a ***third party*** [] breached the Agreement.  A party cannot make a successful claim by proving its own breach.") (emphasis in original).  Because Aleshire admits that she breached her contract with Wachovia, she has pleaded herself out of court as to her tortious interference with contractual relations claim as alleged in Count V.  *See Tamayo,* 526 F.3d at 1086 (a "party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims.").  The Court thereby grants Harris' motion to dismiss Count V with prejudice.